UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHERRY SCALERCIO-ISENBERG,
       Plaintiff,

-v-

MORGAN STANLEY SERVICES
GROUP INC., *et al.*,
       Defendants.

19-CV-6034 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

  Plaintiff Sherry Scalercio-Isenberg brings this action *pro se* against Defendants Morgan Stanley Services Group Inc., Matthew Dziedzic, James P. Gorman, Jeff Brodsky, and Kerrie R. Heslin (collectively, "Morgan Stanley"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* (*See* Dkt. No. 5-2 ("Compl.").) Plaintiff alleges that Morgan Stanley discriminated against her on the basis of age, gender, and disability when it failed to hire her. (*Id.*) She further alleges that Defendants retaliated against her when she complained of the discrimination. (*Id.*) Defendants removed the case from New York Supreme Court, New York County, on June 27, 2019. (Dkt. No. 1.) Defendants now move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 8.) For the reasons that follow, the motion to dismiss is granted.

1

**I.     Background**

Plaintiff Sherry Scalercio-Isenberg is a 53-year-old woman. (Compl. at 4.) She was previously Managing Director, Head of Americas at Lombard Risk Management. (Compl. at 4, 7.) In that role, she managed a team of fourteen, and reported directly to the London-based CEO. (Compl. at 4.) In 2012 or 2013, Scalercio-Isenberg resigned from Lombard Risk Management due to her need for an emergency surgery. (*Id.*) The surgery left her with a physical disability on her left side, which is visible when she walks. (*Id.*)

Scalercio-Isenberg asserts in her complaint that she applied to Defendant Morgan Stanley over 25 times in approximately six months. (Compl. at 5.)[1] Scalercio-Isenberg alleges that the online application portal "requires the [c]andidate to answer many [p]re-screening questions which directly relate to a [c]andidate['s] [g]ender, [d]isability and [a]ge." (Compl. at 5–6.) However, the online portal only collects data on a volunteer basis regarding a candidate's gender and ethnicity. (Dkt. No. 10-2 at 6.)[2] No data is collected via the online portal regarding a candidate's disability or age. (*See* Dkt. No. 10-2.) In any event, Scalercio-Isenberg never received an interview.

Scalercio-Isenberg subsequently contacted Defendant Matthew Dziedzic, who she alleges "oversees and controls the [r]ecruiting and hiring process for [r]isk management positions" in the New York Office. (Compl. at 7.) In a phone conversation, Dziedzic raised concerns about Scalercio-Isenberg's resume format. (*Id.*) A contact of Scalercio-Isenberg whom she describes

---

[1] Morgan Stanley disputes this fact, asserting that she submitted 24 applications between September 2016 and May 2018. (Dkt. No. 9 at 2 n.3.)

[2] The candidate portal was "incorporated by reference" in the complaint (*see* Compl. at 5–6), and thus can be properly considered when considering Morgan Stanley's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

2

as "a highly regarded expert in the [r]ecruiting [s]ervices business," allegedly told her that Dziedzic was attempting to "'weed' [her] out," and that it was "a common practice used by [r]ecruiters to hide Title VII [d]iscrimination." (Compl. at 7–8.) In response, Scalercio-Isenberg decided to "find a way around the potential discrimination she suspected was occurring," and reached out to Victoria Heimann, a recruiter in Morgan Stanley's Philadelphia office. (Compl. at 8, 15.) Heimann provided her with guidance regarding how to improve her resume. (*Id.*)

On May 3, 2018, Scalercio-Isenberg again applied to Morgan Stanley, this time for Executive Director, Liquidity Planning and Coverage Strategy. (Compl. 8–9.) On May 6, 2018, when she checked her application status, she was "shocked" to learn that she was no longer being considered for the position. (Compl. at 9.) The next day, she sent an email to Dziedzic, requesting feedback on her application. (*Id.*) In her email, she expressed her surprise and asserted that she was "highly qualified in every area of [l]iquidity risk [management,] i.e., [t]reasury, cash management, [c]ollateral [management] and all reg[ulatory] compliance." (Compl. at 10.) When he did not respond, she alleges that she sent Dziedzic five follow-up emails from May 8, 2018, to May 26, 2018. (Compl. 10–11.) In the interim, on May 17, 2018, Scalercio-Isenberg had a phone call with Alison Guerzon, who worked with Recruiting, to "review [Scalercio-Isenberg's] background and experience." (Compl. at 11.) As part of that conversation, Guerzon "inquired about a break in employment," and Scalercio-Isenberg "explained the break was due to [her] surgery and provided details." (*Id.*) Guerzon expressed "interest and empathy," and provided information about a helpful program for which Scalercio-Isenberg would qualify. (*Id.*)

In her May 22, 2018 email to Dziedzic, she asserted that "[t]his [wa]s clearly NOT a beneficial time to discriminate against a Female Wallstreet [sic] professional," and that she

would not tolerate gender discrimination. (Dkt. No. 10-9 at 2.)[3] In her May 26, 2018 email to Dziedzic, she complained of his "unethical business practices," because he had remained "silent and unresponsive." (Dkt. No. 10-10 at 3.)[4] She further threatened to "move forward with next steps and, at a minimum, email the timeline of events and copies of the emails . . . sent . . . to [Defendant] James Gorman [President and CEO of Morgan Stanley]." (*Id.*) In further correspondence, she asked how it was "ethically possible" for her to be rejected only three days after applying and demanded a "logical response and explanation." (Compl. at 12.) She informed him that she had "worked in Wall Street a long time [sic]" and that she was "very business savvy and kn[e]w bullshit when [she saw] it." (Compl. at 12, 18.)

On June 3, 2018, Scalercio-Isenberg emailed Defendant James Gorman, President and CEO of Morgan Stanley. (Compl. at 12.) In the email, she expressed concern about Dziedzic and the "unethical business practice" in the New York office. (*Id.*) She stated that a friend of hers who "knows [and] worked with [Dziedzic] previously . . . validated [her] concerns after [she] explained [her] interactions with [Dziedzic]." (*Id.*) She went on to describe herself as "a very smart, dynamic Wallstreet [sic] woman" who "keep[s] [her]self in good shape" and is "very presentable no matter what kind of meeting or board presentation." (Dkt. No. 10-12 at 3.)[5] She

---

[3] This email was "incorporated by reference" in the complaint (*see* Compl. at 11), and thus can be properly considered when considering Morgan Stanley's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Roth*, 489 F.3d at 509.

[4] This email was also "incorporated by reference" in the complaint (*see* Compl. at 11), and thus can be properly considered when considering Morgan Stanley's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Roth*, 489 F.3d 499 at 509.

[5] This email was also "incorporated by reference" in the complaint (*see* Compl. at 12), and thus the full text can be properly considered when considering Morgan Stanley's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Roth*, 489 F.3d 499 at 509.

explained that she was the Managing Director, Head of Americas at Lombard Risk Management, and provided insight into her working experience in the 1990s:

> In the late 90's, as a Sr. Treasury-Finance Analyst, reporting into the Treasurer/CFO's office[, w]e were in a liquidity crisis! I worked through all the numbers late one night when PNW (Pinnacle West Capital corp./APS [sic] was contemplating Chapter11 [sic] bankruptcy. I was only 28 years old, I had no idea what was happening in the Board room [sic]. The CFO came down and told me what I needed to prepare, asap! I built spreadsheets for hours at late night [sic] figuring our Liquidity position out for 2 weeks! No software program to run the calcs! Our Holding Company managed Liquidity for 4 other entities. [ Many Bank Accounts, several Broker Dealer relationships for Liquidity funding or Investment for excess Cash reserves.: [sic]

(*Id.*) Scalercio-Isenberg also attached "a timeline of events and a screenshot [of the job position]." (Compl. at 12; *see* Dkt. No. 10-12 at 6.)

On June 7, 2018, Morgan Stanley began what Scalercio-Isenberg refers to as "formal [r]etaliation efforts" against her by sending her a cease and desist letter. (Compl. at 13.) The letter from Defendant Kerrie Heslin, outside counsel for Morgan Stanley, asserts that Scalercio-Isenberg engaged in "repeated abusive, disparaging and disruptive behavior toward Morgan Stanley's employees, including . . . unsolicited emails making false and disparaging remarks about Matthew Dziedzic." (Compl. at 14.) It affirms that all Morgan Stanley hiring decisions "are based on legitimate, business reasons," and that based on Scalercio-Isenberg's "abusive and unprofessional conduct, [she is] not eligible to be considered for any positions at Morgan Stanley. (Compl. at 13.) Heslin wrote that Scalercio-Isenberg "must <u>immediately</u> cease and desist from . . . further abusive, disruptive and unwanted contact toward Morgan Stanley's employees, including but not limited to any unsolicited contact via email, telephone, text

message or social media." (Compl. at 14.) Scalercio-Isenberg, for her part, asserts that her "communications were professional, pleasant and cordial."[6] (Compl. at 16.)

## II. Legal Standard

A district court properly dismisses an action under Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate it." *Garcia v. Lasalle Bank NA.*, No. 16 Civ. 3485, 2017 WL 253070, at *3 (S.D.N.Y. Jan. 19, 2017) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015)). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must accept as true all the material factual allegations contained in the complaint, but a court is "not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Additionally, a court "may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Dismissal under Rule 12(b)(6) is proper when a complaint lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[6] While Morgan Stanley details a number of "harassing email[]" communications sent to Defendants after Scalercio-Isenberg's receipt of the cease and desist letter (*see* Dkt. No. 9 at 8–10), the Court cannot consider them in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). None of these emails are "attached to the complaint or incorporated in it by reference," nor are they documents "upon which the complaint solely relies" and are "integral to the complaint." *Roth*, 489 F.3d at 509 (alterations omitted). The emails do not qualify as documents that Scalercio-Isenberg "had knowledge and relied on in bringing suit," *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), because "[a] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Accordingly, these communications are "excluded" from consideration. Fed. R. Civ. P. 12(d).

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A document filed *pro se*," like the complaint here, "is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (Sotomayor, J.) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). Nonetheless, even a *pro se* complaint must contain "factual allegations sufficient to raise a right to relief above the speculative level," including "an allegation regarding [each] element necessary to obtain relief." *Blanc v. Capital One Bank*, 2015 WL 3919409, at *2 (internal quotation marks omitted). When considering a motion to dismiss under Rule 12(b)(6), the Court may consider facts alleged in the complaint as well as any documents attached to it as an exhibit or incorporated in it by reference. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam). Additionally, when a plaintiff fails to attach or incorporate by reference any document "upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss." (*Id*. (internal quotation marks and citation omitted))

## III. Discussion

Defendants move to dismiss Plaintiff's NYSHRL and NYCHRL claims pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants further move to dismiss Plaintiff's Title VII, ADEA, ADA, NYSHRL, and NYCHRL claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Territorial Scope of NYSHRL and NYCHRL

Morgan Stanley argues that Scalercio-Isenberg's NYSHRL and NYCHRL claims must be dismissed pursuant to Rule 12(b)(1) because she cannot plead facts alleging any impact in New York State or New York City. (*See* Dkt. No. 9 at 12–15.)

7

Scalercio-Isenberg is a resident of New Jersey, not New York. (*See* Compl. at 27.) Under the NYSHRL and NYCHRL, "nonresidents of the city and state must plead and prove that the alleged discriminatory conduct had an impact within those respective boundaries." *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289 (2010). Critically, "it is the site of impact, not the place of origination, that determines where discriminatory acts occur." *Int'l Healthcare Exch.., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 362 (S.D.N.Y. 2007). Scalercio-Isenberg alleges, in sum and substance, that she was discriminated against when she was not hired by the New York office of Morgan Stanley, and that Morgan Stanley retaliated against her when she complained. (*See* Compl.)

However, even "[w]here the discriminatory conduct occurs outside the geographical bounds of New York City, courts have found that the impact requirement is satisfied if the plaintiff alleges that the conduct has affected the terms and conditions of plaintiff's employment within the city." *Anderson v. HotelsAB, LLC*, No. 15 Civ. 712, 2015 WL 5008771, at *2 (S.D.N.Y. Aug. 24, 2015). Courts in this district have accordingly found that when non-resident plaintiffs allege that that they were not hired for a job in New York City on a discriminatory basis, the impact requirement for both the NYSHRL and NYCHRL is met. *See Chau v. Donovan*, 357 F. Supp. 3d 276, 283–84 (S.D.N.Y. 2019); *Anderson*, 2015 WL 5008771, at *3–4. Therefore, Scalercio-Isenberg's NYSHRL and NYCHRL claims cannot be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### B. Age and Gender Discrimination Claims

Scalercio-Isenberg alleges that Morgan Stanley's decision not to hire her was impermissibly based, in part, on her age and gender. (*See* Compl. at 4.) Discrimination claims under Title VII, the ADEA, and the NYSHRL are evaluated under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);

*Dimps v. Taconic Corr. Facility*, No. 17 Civ. 8806, 2019 WL 1299844, at *7 (S.D.N.Y. Mar. 20, 2019) ("The pleading standards for employment discrimination claims raised under NYSHRL mirror the pleading requirements under Title VII . . . and ADEA.")  First, the plaintiff must establish a *prima facie* case of discrimination based on the protected characteristic.  The burden then shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action.  Finally, the burden shifts back to the plaintiff to demonstrate the employer's reason for the adverse employment action was merely a pretext for discrimination.  *See Dimps,* 2019 WL 1299844, at *4 (citing *McDonnall Douglas*, 411 U.S. at 802, 804).

Here, Scalercio-Isenberg has failed to make out a *prima facie* case that she suffered age or gender discrimination when Morgan Stanley declined to hire her.  To establish a *prima facie* claim of gender or age discrimination for failure to hire, a plaintiff must demonstrate: (1) she is a member of a protected class, (2) she was qualified for the job for which she applied, (3) she was denied the job; and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  Further, to prevail on a claim of age discrimination, the plaintiff must demonstrate that her age was the "but for" cause of the adverse employment action.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

Here, Scalercio-Isenberg does not demonstrate that Morgan Stanley's failure to hire her occurred under circumstances that give rise to an inference of gender discrimination.  Scalercio-Isenberg has alleged no facts that suggest that Morgan Stanley's decision not to hire her was based on her gender.  The fact that she showed that she was "very interested" in employment with Morgan Stanley when she submitted approximately 25 job applications (*see* Compl. at 7), does not entitle her to a job interview.  Further, the speed with which her latest application was

9

rejected (*see* Compl. at 8–9) does not suggest anything other than perhaps a familiarity with her application after a litany of job applications. Even the fact that she may have volunteered that she was a woman on her application (*see* Dkt. No. 10-2 at 6) does not move the needle in her favor. Scalercio-Isenberg is missing the connective tissue that links her protected status to the alleged failure to hire. She offers no allegations, save for her own speculation and that of other uninvolved persons, that Morgan Stanley used that information in its hiring decisions — much less that it was a *motivating factor* in their decision making. Accordingly, Scalercio-Isenberg fails to make out even a *prima facie* case for gender discrimination under Title VII or the NYSHRL.

Scalercio-Isenberg further cannot demonstrate that she was not hired on account of age discrimination. She does not allege any facts that suggest that Morgan Stanley even knew of her age when the decision not to hire her was made. Contrary to the allegations in her complaint, the online application portal does not collect information about a candidate's age. (*See* Dkt. No. 10-2.) Scalercio-Isenberg alleges that while assisting her with "streamlining" her resume, Heimann told her: "Sherry, at our [a]ge, we've done a lot, we have a lot of experience . . . but you don't want to intimidate the [h]iring manager." (Compl. at 8.) Even if this statement were to be construed as Heimann expressing an opinion that the hiring manager was "intimidated" by Scalercio-Isenberg's age, this comment alone is insufficient to demonstrate that age discrimination was the "but for" cause of Morgan Stanley's failure to hire her. Accordingly, Scalercio-Isenberg also fails to make out a *prima facie* case for age discrimination under the ADEA or the NYSHRL.

### C. Disability Discrimination Claims

Scalercio-Isenberg also claims that she failed to be hired at Morgan Stanley, in part, on the impermissible basis of her disability. (*See* Compl. at 4.) Disability discrimination claims are

10

similarly handled under the *McDonnell Douglas* framework. *See Dimps*, 2019 WL 1299844, at *7. To establish a *prima facie* claim of disability discrimination under the ADA, a plaintiff must demonstrate that (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability. *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam). The "same elements" must be proved to establish an NYSHRL disability claim. *Kinneary v. City of N.Y.*, 601 F.3d 151, 158 (2d Cir. 2010).

Here, Scalercio-Isenberg has alleged no facts to suggest that Morgan Stanley knew of her disability when they made the decision not to hire her. Contrary to the allegations in her complaint, the online application portal does not collect information about a candidate's disability. (*See* Dkt. No. 10-2.) Additionally, while Scalercio-Isenberg alleges that she mentioned her disability to Guerzon in their May 17, 2018, conversation (*see* Compl. at 11), Morgan Stanley had made the decision not to hire her by May 6, 2018 (*see* Compl. at 9). Although Scalercio-Isenberg alleges that her disability is "visible when she walks" (Compl. at 4), she does not allege that any of the defendants ever saw her walk and was thus alerted to her disability. Accordingly, Scalercio-Isenberg fails to make a *prima facie* case of disability discrimination under the ADA or the NYSHRL.

### D.     NYCHRL Discrimination Claims

The NYCHRL has a different pleading standard than pleading standards applied to claims under Title VII, ADEA, the ADA, and the NYSHRL. To prove a claim for discrimination under the NYCHRL, a plaintiff must demonstrate by a preponderance of the evidence that she was "treated less well at least in part *because of* a protected trait." *Bell v. McRoberts Protective*

11

*Agency*, No. 15 Civ. 0963, 2016 WL 1688786, at *4 (S.D.N.Y. Apr. 25, 2016) (internal quotation marks omitted) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). As noted above, Scalercio-Isenberg has not pleaded any facts that permit an inference that she was treated less well than other applicants to Morgan Stanley, including other unsuccessful Morgan Stanley applicants. While Scalercio-Isenberg has asserted that the situation "has smelled bad from the beginning" (Compl. at 12), she must raise "factual allegations sufficient to raise a right to relief above the speculative level." *Blanc*, 2015 WL 3919409, at *2 (citation omitted). Accordingly, her NYCHRL claims must fail.

### E. Retaliation Claims

"The standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (citation omitted). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; (4) there was a causal connection between the protected activity and that adverse action. *Id.*

It is not clear that Scalercio-Isenberg's allegations establish that she was engaged in protected activity. A plaintiff is "required to have had a good faith, reasonable belief that [s]he was opposing an employment practice made unlawful by Title VII." *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galderi-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). "The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person." *Kelly*, 716 F.3d at 17. Here, Scalercio-Isenberg's alleged subjective belief that she was being discriminated against on the basis of her gender, age, or disability cannot plausibly be viewed as a reasonable

belief under the circumstances alleged in the complaint. Scalercio-Isenberg never alleged that anyone commented negatively on any protected characteristic nor has she alleged a single fact that would suggest that Morgan Stanley's decision not to hire her was made on any discriminatory basis. Because she has not alleged enough facts to suggest that she was engaged in protected activity, her retaliation claims under both Title VII and the NYSHRL must fail.

To prevail on a retaliation claim under the NYCHRL, a plaintiff must show (1) that she took an action opposing her employer's discrimination, and (2) that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 838 (S.D.N.Y. 2013) (quoting *Mihalik*, 715 F.3d at 112). "A defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Mihalik*, 715 F.3d at 113 (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39–40 & n.27 (N.Y. App. Div. 1st Dep't 2009)). As discussed above, Scalercio-Isenberg has failed to allege facts suggesting that any discrimination took place. Further, under the circumstances, it cannot plausibly be inferred that Morgan Stanley's cease and desist letter was motivated even in part by "discriminatory or retaliatory motives." Defendant Heslin explicitly stated that the letter was intended to stop Scalercio-Isenberg's "repeated abusive, disparaging and disruptive behavior toward Morgan Stanley's employees, including . . . unsolicited emails making false and disparaging remarks about Matthew Dziedzic." (Compl. at 14.) Indeed, Scalercio-Isenberg herself alleges that that she sent a litany of emails to various Morgan Stanley employees — including emails to Defendant Gorman, Morgan Stanley's CEO. (Compl. at 9–12.) The letter further affirms that all Morgan Stanley hiring decisions "are based on legitimate, business reasons," and that based on Scalercio-Isenberg's "abusive and unprofessional conduct, [she is] not eligible to be considered for any

13

positions at Morgan Stanley." (Compl. at 13.) Given that Scalercio-Isenberg has not alleged any facts plausibly giving rise to an inference that discrimination took place, it follows that she has not alleged any facts that might demonstrate that Defendant Heslin's letter was based even in part by "discriminatory or retaliatory motives." Accordingly, Scalercio-Isenberg's NYCHRL retaliation claim must fail.

### F. Individual Liability

Scalercio-Isenberg also brings suit against several individual defendants: James Gorman, President and CEO; Jeff Brodsky, Chief Human Resources Officer; Matthew Dziedzic, Head of North America Experienced Recruiting; and Kerrie Heslin, outside legal counsel for Morgan Stanley. As a matter of law, none of the individual defendants can be held liable under Title VII, the ADA, or the ADEA. *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (holding that there is no individual liability under Title VII); *Costabile v. N.Y. Dist. Council of Carpenters*, No. 17 Civ. 8488, 2018 WL 4300527, at *4 (S.D.N.Y. Sept. 10, 2018) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010)) (finding that there is no individual liability under the ADA); *Wray v. Edward Blank Assocs., Inc.*, 924 F. Supp. 498, 503 (S.D.N.Y. 1996) (holding that there is no individual liability under ADEA). And Defendant Heslin cannot be held individually liable under the NYSHRL because such liability is "limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365–66 (S.D.N.Y. 2012) (citation omitted). As outside counsel for Morgan Stanley, she does not meet this standard.

Under the NYSHRL and the NYCHRL, individual liability requires "[a]ctual participation in conduct giving rise to a discrimination claim." *Villar v. City of N.Y.*, 135 F. Supp. 3d 105, 143 (S.D.N.Y. 2015). Here, as discussed in Sections III.B–III.E above, Scalercio-

14

Isenberg has not alleged any facts that suggest that there *was* any conduct giving rise to a discrimination claim. Accordingly, it follows that there is no individual liability for any of the defendants under the state or city law.

### G. Leave to Amend

The Second Circuit has held that "[d]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend. . . . However, leave to amend is not necessary when it would be futile." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco*, 222 F.3d at 112 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam)). Accordingly, because of the "special solicitude" with which *pro se* complaints must be read, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted), this Court will afford Scalercio-Isenberg an opportunity to amend her complaint and cure the deficiencies noted above.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff is granted leave to file an amended complaint provided that she does so on or before January 21, 2020. If no amended complaint is filed on or before January 21, 2020, this action will be dismissed with prejudice.

The Clerk of Court is directed to close the motion at Docket Number 8.

SO ORDERED.

Dated: December 19, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge